# Richmond

PRESTON BLANKENSHIP v. COMMONWEALTH OF VIRGINIA.

November 19, 1945.

Record No. 2998.

Present, All the Justices.

The opinion states the case.

*George Abbitt, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *V. P. Randolph, Jr., Assistant Attorney General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

Preston Blankenship was tried by a jury on an indictment charging violation of the provisions of sections 57 and 58 of the Motor Vehicle Code (Acts 1932, p. 648, as amended by Acts 1938, ch. 302; Acts 1942, ch. 432; Michie's Code 1942, sections 2154 (104)-2154 (105)—hit and run), found guilty and his punishment fixed at two years' confinement in the penitentiary. From the judgment entered on the verdict, this writ of error was allowed.

Two of the three assignments of error present only one question, whether the evidence was sufficient to support the verdict.

After 2:00 A. M. on Saturday night, June 17-18, 1944, Preston Blankenship, a white man 21 years of age, and his brother, Sidney, 17 years old, aroused Frank Hubbard, colored, living on the highway near Stonewall in Appomattox County, and told him that there was a man lying in the road either drunk or dead. Frank Hubbard went with the boys to the scene of the accident, and, on a hasty examination, found that the person, later ascertained to be Adolphus Jones, a 15-year-old colored boy weighing about 145 pounds, was dead. The parties tried to telephone for a doctor but the lines were out of order. The first doctor aroused refused to visit the scene. They then went to the

home of H. W. McKinney, the sheriff of Appomattox County, who requested Dr. C. G. O'Brien to go with him to the scene of the accident. Dr. O'Brien stated that he found the boy lying on the left side "face foremost on the road on his elbows." "There was blood coming from his nose, mouth and ears," and it had run probably two feet from the body and congealed. A cut and an abrasion at the base of the skull indicated that he had been struck a severe blow. On the left side of the face the abrasions and scars indicated that the body had been "slid" or dragged on the hard surface. Diagonally across the back was a depression about one-eighth of an inch deep, an inch wide and ten inches long, indicating that he had been hit across the small of his back. Both hands and his left ankle had abrasions and skinned places on them. Both elbows were badly cut. The rupture of the eardrum indicated a brain injury. The doctor stated that he could not say how long the boy had been dead. The body was cold at 4:30 A. M., the time of the doctor's examination. Death may have occurred two hours before the examination.

The sheriff testified that the accused and Frank Hubbard came after him between 3:00 and 4:00 P. M. The accused told the sheriff that he, by himself, was on his way home from Lynchburg and, just beyond Frank Hubbard's home, he saw a man lying in the road but that he could not stop. The sheriff asked him why he did not stop and see whether the man was dead or injured and take him to a doctor if necessary. The accused replied that he "didn't have anything to do with that."

Sergeant L. L. Stanley, of the State Police force, and the sheriff endeavored to find who had inflicted the injuries causing the death of Adolphus Jones. In the course of their investigation, they arrested several colored men who were charged with drunken driving. They ascertained that there had been a party for the colored people given by Reverend Lee, a pastor in the neighborhood. On Sunday afternoon, Sergeant Stanley again saw the accused and began to question him. The accused seemed nervous and excited but told

the sergeant that he had no additional information regarding the accident. Later, the sergeant ascertained that Preston Blankenship and his brother, Sidney Blankenship, some time between 10:00 and 11:00 P. M. Saturday night, had left a colored man's home with two colored girls in their late teens, Lucy Turner and Etta Johnson, and a 15-year-old colored boy, Mott Johnson, as passengers in Blankenship's 1935 Chevrolet coupe. While something was said about stopping at the party at Reverend Lee's home, they did not stop there but went down to Buck Megginson's home on James river. On the way back, between 2:00 and 3:00 P. M. and just before reaching Stonewall, the car struck and ran over Adolphus Jones. Blankenship, the driver, did not stop but took the two colored girls and the colored boy home, about three miles away, and told them: "I don't think anyone will raise any sand. If they do, don't tell anyone you got out of my car."

The accused, when confronted with the two colored girls, admitted that they were in the car with him and his brother at the time he first passed the scene where the body was found and that he did not stop because he wanted to conceal the fact that he had been out riding with the colored girls; that the headlights on his car were rather dim and that he ran to within 15 feet of the body before he saw it; that he turned his car but that the left front wheel ran over the feet of Adolphus Jones, who was lying diagonally across the road with his head about two feet from the ditch and his feet across the center of the highway.

The accused contends that the failure of the Commonwealth to prove beyond a reasonable doubt that Adolphus Jones was living at the time is fatal to the Commonwealth's case.

It is true that no witness testified to the fact that Adolphus Jones was alive when struck by the car of the accused, but the conflicting statements made by the accused, the circumstances, the confusion as to time and other testimony for the Commonwealth are sufficient to present a question for the jury.

The desire to conceal the fact that he and his brother were motoring at night with two colored girls may be natural, but this fact does not excuse Blankenship from failing to stop and offer to render aid to the person struck by his car.

The accused and others in his party stated that they stayed at Buck Megginson's about two and one-half hours. Buck Megginson testified that the accused was at his home only fifteen minutes. Other witnesses for the Commonwealth said that they had seen Adolphus Jones at Reverend Lee's home and, shortly after 12:00 o'clock that night, they saw him walking along the highway within a mile of the scene of the accident.

Lucy Turner, riding in Sidney Blankenship's lap at the time, said that she had been drinking and did not see the body lying in the road but that the car hit a "bump" and swerved like it was going to turn over. Etta Johnson, who was sitting between Blankenship and his brother, said that she did not see the body lying in the road but that they struck "something" that was "lying down or sitting down."

The exact statement made by the accused to the officers at the time of his arrest is as follows: "On June the 17th, 1944, late Saturday evening, myself and Sidney Blankenship went to Concord for dinner and on my way from Concord to Stonewall I went by the home of Harvey Johnson and got Etta Johnson, Mott Johnson and Lucy Turner and taken them down to Buck Megginson's home over on James River. And we stayed there about two hours and a half, and on my way back to Stonewall, I was just north of Frank Hubbard's home and I saw a man lying in the road but I got too close to him to miss him with my car, so I ran over the man with my car. So, I told the girls that was in my car I would take them home and I would come back to where I had hit the man, and I did. I then went back to Frank Hubbard's home and told him that there was a man lying in the road that was drunk or had been hit by a car, and Frank Hubbard got up and went down to where the man was lying and Frank Hubbard said this man is dead."

The accused further contends that the absence of recent dents or marks on his car is conclusive proof of the fact that he did not inflict the injuries described upon the body of Adolphus Jones. The salesman, who sold the car thirty days prior to the accident, testified that, six days after the date of the accident, he examined the car and found no new scratches or dents, and that he did not believe that the car could have hit a man hard enough to kill him without leaving some dents or impressions upon it. On cross-examination, he stated that whether or not striking a man would leave any dents or marks upon the car would depend upon the manner in which he was struck.

■■ The gravamen of the charge under consideration is the flight from the scene and failure to give succor or aid to the injured party. *James* v. *Commonwealth*, 178 Va. 28, 16 S. E. (2d) 296.

The accused admits that he ran over the body of Adolphus Jones, that he did not stop, but that he returned within 4 to 15 minutes after he struck the man. There is other evidence tending to prove that it was much longer than that before he returned to the scene of the accident. In view of the conflicting statements of the accused, the physical facts and the circumstances disclosed, the question as to his guilt or innocence was peculiarly one for the jury. See *Nelson* v. *Commonwealth*, 168 Va. 742, 191 S. E. 620; *Maxwell* v. *Commonwealth*, 167 Va. 490, 187 S. E. 506; *Puckett* v. *Commonwealth*, 157 Va. 800, 160 S. E. 19.

■ The accused contends that it was error for the trial judge to state that he did not think it was "incumbent upon the prosecution to prove beyond all reasonable doubt that the deceased was living at the time of the collision." The jury never heard this statement and therefore could not have been influenced by it. The statement was made in chambers immediately after the lawyers had argued a motion made by the accused to strike the evidence. The jury were told, in each of the four instructions given on the request of the accused, that, if they did not believe that Adolphus Jones was living at the time he was struck by the

car of the accused, their verdict should be not guilty. There was no error in the instructions prejudicial to the accused. In fact, they were more favorable to him than otherwise.

We find no reversible error in the record. The judgment is affirmed.

*Affirmed.*