### Alexandria

JEFFREY THOMAS SMITH

v.

COMMONWEALTH OF VIRGINIA

No. 0189-87-4

Decided April 18, 1989

110

COUNSEL

Albert J. Ahern, Jr., for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

KEENAN, J.—Jeffrey T. Smith was convicted in a bench trial of leaving the scene of an accident in violation of Code § 46.1-176.[1] The issues presented in this appeal are: (1) whether the evidence

[1] Code § 46.1-176 provides in pertinent part:

is sufficient as a matter of law to support the conviction; and (2) whether Smith had reasonable notice that the accident made him subject to the requirements of Code § 46.1-176. We find that the evidence was sufficient to convict Smith under the language of the statute and that he had reasonable notice that he was subject to its provisions. Accordingly, we affirm his conviction.

## I.

The evidence presented at trial showed that in the early morning hours of August 10, 1986, Smith was driving with four friends in his Ford Bronco truck. They came upon four other people who had experienced car trouble and asked Smith for a ride. Smith agreed, saying, "Hop in." All four hopped onto the bumper of the truck. One jumped off immediately and the other three individuals remained, holding onto the cab of the truck. Dean Yauger, one of the riders on the outside, testified that as the truck began to move, someone inside said, "Hold on." The truck window was down at this time. According to Yauger, the truck reached speeds of thirty-five to forty miles per hour. Yauger testified that the people riding on the bumper yelled for the truck to slow down. However, it did not slow down, and as it rounded a curve in the road, all three riders fell from the bumper onto the roadway.

Yauger testified that he injured his knee, shoulder and hip, and was bleeding. Veronica Klaras injured her shoulder in the fall. She testified that Scott Robillard, who also had fallen from the truck, was lying in the street. Klaras observed blood flowing from his head and that there was a puddle of blood in the street. The evidence further showed that Smith returned to the location of the injured riders. According to Yauger and Klaras, Smith stayed for

(a) The driver of any vehicle involved in an accident in which a person is killed or injured or in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic and report forthwith to the State Police or local police authority and, in addition, to the person struck and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with, or to the custodian of other damaged property, his name, address, driver's license number and the registration number of his vehicle. The driver shall also render reasonable assistance to any person injured in such accident, including the carrying of such injured person to a physician, surgeon or hospital for medical treatment if it is apparent that such treatment is necessary or is requested by the injured person.

less than a minute and did not get out of the truck. Yauger testified that he heard someone say from out of the driver's window, "They're going to blame this on me." Yauger and Klaras both testified that no one in the truck offered the injured parties any assistance. After the truck drove off, Klaras went to a nearby house to call for an ambulance. Smith's vehicle did not return to the scene of the accident nor did the police receive any report from him concerning the accident. Scott Robillard was taken to a hospital where he later died.

Based on his receipt of a partial license plate number, Investigator Hendren of the Fairfax County Police located Smith and his vehicle three days after the accident. Hendren testified that after being advised of his *Miranda* rights, Smith told him that when he returned to the scene of the accident, two of his friends got out of the truck. Smith said that when they got back into the truck, his friends told him that an ambulance was on the way. Finally, Smith admitted that he was aware that people had been injured as a result of the accident.

At the trial, Smith testified in his own behalf. He stated that he left the scene of the accident because he thought the injured party did not need his assistance. Smith further testified that it did not occur to him to exchange information because he did not believe that he had been in an accident.

Testimony was also received from passengers inside the truck. They testified that they knew one person had been injured. Peter Larsen testified that they decided to leave since an ambulance was on the way. Larsen also testified that it did not occur to him or anyone else to exchange license information since they did not believe they had been in an automobile accident. The other passengers gave similar corroborating testimony. Amy Rice, one of the passengers, also testified that Smith was upset at the scene of the accident and said that he was afraid he was going to get in trouble because he already had problems with his driving record.

## II.

Smith first argues that the evidence is insufficient as a matter of law to support his conviction. Specifically, he contends that he was not involved in an "accident" as contemplated by Code § 46.1-176. In making this argument, Smith relies on the fact that his

vehicle did not physically strike the individuals who fell from his truck. He asserts that the statute did not apply to him because, in addition to its requirement of reporting to the State or local police, it assigns the driver a duty to give information "to the person *struck* and injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the *vehicle collided with*. . . ." (emphasis added). Since no person was struck by his vehicle, and it did not collide with another vehicle, Smith concludes that the statute did not apply to him under the circumstances of this case. We disagree.

"[T]he primary objective of statutory construction is to ascertain and give effect to legislative intent." *Boothe v. Commonwealth*, 4 Va. App. 484, 490, 358 S.E.2d 740, 744 (1987) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)). If we were to accept Smith's reasoning, only those vehicular accidents where a "collision" occurred would be subject to the requirements of Code § 46.1-176. We believe that Smith's interpretation is untenable since the evil uniformly sought to be remedied by the statute is avoidance of civil or criminal liability and failure to give assistance to injured parties. *Blankenship v. Commonwealth*, 184 Va. 495, 500, 35 S.E.2d 760, 762 (1945).

Initially, we note that the term "accident" is not defined in Code § 46.1. We also note that under Code § 46.1-176, the duty of a driver involved in an accident to stop and render reasonable assistance to any person injured in the accident arises totally independent of the statutory language "struck and injured" and "vehicle collided with." Those phrases appear only in the part of the statute which requires a driver to provide certain identification information.

A fundamental rule of statutory construction is that a penal statute "must be strictly construed against the State and limited in application to cases falling clearly within the language of the statute." *Crews v. Commonwealth*, 3 Va. App. 531, 536, 352 S.E.2d 1, 3 (1987) (quoting *Turner v. Commonwealth*, 226 Va. at 459, 309 S.E.2d at 338). Also fundamental to statutory construction is the rule that a statute must be construed from its four corners and not by singling out particular words or phrases. *Commonwealth Natural Resources, Inc. v. Commonwealth*, 219 Va. 529, 536, 248 S.E.2d 791, 795 (1978). Therefore, in interpreting

Code § 46.1-176, we do not single out the phrases "struck and injured" and "vehicle collided with." Instead, we interpret the statute strictly, as a whole, because any partial construction of the statute would be violative of legislative intent and result in an inconsistent application of the law.

The word "accident" is defined variously as "an event occurring by chance or from unknown causes," or "an unfortunate event." Webster's Seventh New Collegiate Dictionary 5 (1963). Clearly, there is nothing inherent in the meaning of the word "accident" that suggests that it applies only when a vehicle strikes or collides with a person or property.

Although this issue presents a matter of first impression in Virginia, a similar factual situation was considered by the Supreme Court of Iowa in *State v. Carpenter*, 334 N.W.2d 137 (Iowa 1983). In *Carpenter*, an intoxicated passenger had jumped from the truck which Carpenter was driving. Although Carpenter did stop his truck and place the passenger back in it, he left her in the truck while he attended a party. The passenger died from a subdural hematoma sustained in her fall from the truck. Carpenter was convicted of failing to render assistance at the scene of an accident which involved personal injury, in violation of Iowa Code § 321.261 and former § 321.263.[2] The Supreme Court of Iowa concluded that despite the statutory references to "person struck" and "vehicle collided with," there did not have to be a collision in

---

[2] Iowa Code § 321.261 (1981) provides in pertinent part:

The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close as possible and if able, shall then return to and remain at the scene of the accident in accordance with section 321.263. Every such stop shall be made without obstructing traffic more than is necessary.

\* \* \*

Former Iowa Code § 321.263 (1981) provided in pertinent part:

The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his operator's or chauffeur's license *to the person struck* or the driver or occupant of or person attending any *vehicle collided with* and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person. (emphasis added).

order for the duties under the statute to arise. Since the purpose of the statute is to prevent motorists involved in accidents from evading criminal or civil liability by leaving the scene of the accident, as well as to provide assistance to injured parties at the scene, the court reasoned that the duties of a driver under the statute are triggered in all motor vehicle accidents regardless whether a collision has occurred. *Id.* at 139.

We find that the same reasoning applies to the statute before us. Injuries to persons or property arising in connection with the operation of motor vehicles do not always or necessarily involve collisions or the striking of people, as is aptly demonstrated by this case. To hold otherwise would defeat the clear legislative intent of Code § 46.1-176 that every individual involved in a motor vehicle accident stop at the scene of the accident to exchange information and render reasonable assistance to any person injured in such accident. The purpose of Code § 46.1-176 is to prevent motorists involved in accidents from evading civil or criminal liability by leaving the scene of an accident and to require drivers involved in an accident to provide identification information and render assistance to injured parties. We hold that these duties apply regardless whether a collision has occurred or a person has been struck.

We turn now to Smith's claim that he did not have reasonable notice that the accident in this case subjected him to the duties imposed by Code § 46.1-176. The notice requirement of the due process clause is violated when a criminal statute fails to provide a person of ordinary intelligence fair notice that his conduct is prohibited by the statute. *United States v. Harriss*, 347 U.S. 612, 617 (1954). As noted by the Supreme Court in *Rose v. Locke*, 423 U.S. 48 (1975), this constitutional requirement does not invalidate a statute just because the statute could have been drafted more precisely. *Id.* at 49. Instead, due process requires that the law give sufficient warning so that individuals "may conduct themselves to avoid that which is forbidden." *Id.* at 50. This is an objective rather than a subjective test. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Applying this test to the case before us, we find that Smith was given sufficient warning by the statute that he had been involved in an accident within the meaning of Code § 46.1-176. *See State v. Carpenter*, 334 N.W.2d at 140.

For the reasons stated, we affirm Smith's conviction.

*Affirmed.*

Benton, J., and Duff, J., concurred.